UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

BLEDAR HAXHIA,

                Petitioner,    13-CV-1012 (KMW)
                                         OPINION & ORDER

  -against-

WILLIAM LEE, Superintendent, Green Haven
Correctional Facility, and ERIC T.
SCHNEIDERMAN, New York State Attorney
General,

                Respondents.

-------------------------------------------------------------X

KIMBA M. WOOD, U.S.D.J.:

      Petitioner Bledar Haxhia seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, based on the alleged denial of his right to a fair trial under the Sixth Amendment of the United States Constitution.  Haxhia claims that the state trial court violated his Sixth Amendment rights in two ways: by making "four significant and erroneous evidentiary rulings to which defense counsel objected"; and by failing "to conduct a thorough investigation into repeated notes from deliberating jurors, indicating that the jurors were being racially harassed by their colleagues in the jury room and, as a result, [were] unable to deliberate."  (Pet'r's Mem. [ECF No. 1] at 1–2).

      On May 1, 2014, Chief Magistrate Judge Fox issued a Report and Recommendation recommending that the Court deny Haxhia's petition.  *Haxhia v. Lee*, No. 13-CV-1012, 2014 WL 1877081 (S.D.N.Y. May 1, 2014).  The Court respectfully disagrees.  For the reasons stated herein, Haxhia's petition is GRANTED.

I.     BACKGROUND

a.     **The Altercation**

Haxhia was convicted of manslaughter by a New York state court jury on November 10, 2008. (Resp't's Answer [ECF No. 6] at 3). His conviction stemmed from an altercation that occurred on April 1, 2006. That afternoon, Haxhia collided with Ermal Qelia while both were participating in a soccer game. At the end of the match, the men confronted each other, and after friends broke up the altercation, Haxhia and Qelia agreed to meet that evening to settle their differences. Haxhia went home, retrieved an unlicensed gun, and later met up with Qelia. Another altercation ensued, during which time Haxhia shot and killed Qelia.[1]

b.     **Alleged Legal Errors By the Trial Court**

Haxhia contends that the state trial court made five legal errors that deprived him of his right to a fair trial under the Sixth Amendment—four evidentiary errors and one error concerning jury deliberations.

*i.     Alleged Evidentiary Errors*

<u>911 Call</u>. Haxhia states that, more than two years prior to trial, he requested from the State all 911 call recordings that related to his case. (Trial Trans. [ECF No. 12] at 142–45). In response, the State asserted that all related 911 recordings had been destroyed. (*Id.* at 143). Yet during the second day of testimony at trial, the State advised Haxhia that a 911 tape did exist, and that the State intended to introduce it as evidence of Haxhia's guilt. (*Id.* at 144–45). The trial court overruled Haxhia's objection to the admission of the 911 tape. (*Id.* at 142, 152).

<u>Ballistics Report</u>. Haxhia similarly requested from the State disclosure of "any expert witness testimony of any ballistic evidence." (Pet'r's Mem. 14). Haxhia asserts that the State

---

[1] The details of this altercation are disputed by the parties, *compare* (Pet'r's Mem. 12–13), *with* (Resp't's Mem. [ECF No. 15] at 2), but that dispute is not relevant to the instant motion.

again denied the existence of any such evidence or testimony. (*Id.*) Yet at trial, the State sought to introduce ballistics evidence via the testimony of an expert witness who had not appeared on the State's witness list. (Trial Trans. [ECF No. 13] at 409–11). The trial court overruled Haxhia's objection to the testimony. (*Id.* at 413–14).

<u>Victim Impact Testimony</u>. During direct examination of Besim Haziraj, a witness for the State, Haziraj testified on direct examination that he and Qelia had been "very, very good friends," that Haziraj felt "very bad not having him around," and that Qelia was "a very caring person. He was good to everybody. He was a very good person, everybody that knew him, loved him." (Trial trans. [ECF No. 12] at 161–62). Haxhia objected to Haziraj's testimony, but the trial court overruled the objection. (*Id.*)

<u>Medical Records</u>. Haxhia sought to introduce at trial medical records showing that he suffered from a pre-existing injury that made him prone to shoulder dislocation. (Trial Trans. [ECF No. 10] at 632). The trial court refused to allow Haxhia to introduce the evidence. (*Id.* at 641).

> ii. *Jury Deliberation Concerns*

On the third day of jury deliberations, the trial court received a note from Juror #3 which stated:

> Your honor I am Jury [sic] #3. I believe I can no longer continue to deliberate on this case fairly. Things has [sic] escalated to the point where I have been disrespected by being called a nigger. I feel that my view on this case is not being respected. And I'm feeling that I'm being forced to agree with others.

(Pet'r's Mem. 16). That same day, the trial court received a note from Juror #4, which read:

> I would like to be excused from the jury. There are personnel [sic] reasons I cannot continue. I apologize for this.

> We are humbly requesting to resume deliberation Monday morning due to extreme tension which became overwhelming and we feel that it is in the best interest of all parties involved.

(*Id.*)  Several days later, the court received a second note from Juror #3:

> Your honor I have listened to all the evidence presented.  I have weighed all possibilities.  I feel full heartedly I can no long [sic] deliberate on this case.  I am emotionally and mentally exhausted.  I feel I will not be able to render a decision in this case objectively.  I am sincerely requesting to be excused from this case and an alternate replace me.

(*Id.* at 16–17).

Each time the trial court received one of these notes, Haxhia asked the court to conduct an *in camera* interview of each of the twelve jurors to investigate the jurors' concerns and any potential conflicts within the jury room.  The trial court refused to do so, and instead gave the jury what Haxhia characterizes as a "meaningless 'pep talk,'" (*id.* at 17), about how they might handle disagreements that present themselves during deliberation.  *See* (Trial Trans. [ECF No. 8] at 999–1001) ("What needs to happen here is twelve people have to agree.  It's not always easy.  Sometimes it takes a little doing.  And everyone being human, there are occasions where someone might lose some patience.  Don't get discouraged.").

Three days after Juror #3 sent in her second note to the trial court, the jury informed the court that they were hung on the second-degree murder count; they later agreed on a verdict of manslaughter.  (Trial Trans. [ECF No. 8] at 1050–53).

### c.  Haxhia's Appeal

Haxhia appealed his conviction to the New York Supreme Court, Appellate Division.  He argued, *inter alia*, that the five alleged errors discussed above deprived him of his Sixth Amendment right to a fair trial.  The appeals court held that Haxhia had failed to preserve his Sixth Amendment claims because he had not raised them before the trial court, as required by

4

New York Criminal Procedure Law ("NY CPL") § 470.05(2). *People v. Haxhia*, 915 N.Y.S.2d 557, 558 (App. Div. 2011).

Section 470.05(2) provides that:

For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

Applying that rule, the NY appeals court held that Haxhia had failed to raise his Sixth Amendment claims in a timely, sufficiently specific objection. *Haxhia*, 915 N.Y.S.2d at 558. The court then rejected the remainder of Haxhia's appeal and affirmed his conviction. *Id.*

The New York Court of Appeals denied Haxhia's application for leave to appeal the Appellate Division's decision, *People v. Haxhia*, 952 N.E.2d 1099 (N.Y. 2011), and the United States Supreme Court denied Haxhia's petition for a writ of certiorari, *Haxhia v. New York*, 132 S. Ct. 1539 (2012).

## II. DISCUSSION

A petitioner can obtain habeas corpus relief under 28 U.S.C. § 2254 only by showing that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or resulted in a decision that was based on an unreasonable determination of the facts presented to the state court. 28 U.S.C. § 2254(d)(1)–(2). Furthermore, federal courts will not consider issues of federal law under § 2254 if there was an independent and adequate state law ground for the challenged decision. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

5

### a. Independent and Adequate State Law Ground

#### i. NY CPL § 470.05(2)

The Appellate Division held that Haxhia failed to preserve his Sixth Amendment claims based on its reading of NY CPL § 470.05(2)—a procedural rule. Under NY CPL § 470.05(2), often referred to as New York's Contemporaneous Objection Rule, a party must object to a ruling at an appropriate time during trial in order to preserve the issue for appeal. "The purpose of this rule is to apprise the trial judge and the prosecutor of the nature and scope of the matter defendant contests, so that it may be dealt with at that time." *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007). Moreover, that objection must be specific enough to alert the judge to the particular basis for the objection: "A general objection is not sufficient to preserve an issue since such would not alert the court to defendant's position. Instead New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error." *Id.*

#### ii. Legal Standard

Where a state court holds that a defendant has defaulted his federal claim under a state procedural rule, that rule constitutes an "independent" ground for decision. *See Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003). To determine whether the state's application of the rule was "adequate" to bar collateral consideration of the federal claim, courts conduct a "deferential" review. *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011). Courts must find that the application of a state procedural rule was adequate as long as "the state ruling falls within the state's usual practice and is justified by legitimate state interests." *Id.*

As a state procedural rule, NY CPL § 470.05(2) constitutes an independent state ground. *See Downs*, 657 F.3d at 102. Accordingly, to determine whether the state court's reliance on NY

CPL § 470.05(2) bars collateral consideration of Haxhia's Sixth Amendment claims, the Court must determine only whether that finding is an adequate ground for decision.

"We generally assess the adequacy of a state ground of decision by examining whether the rule upon which the state court relied is 'firmly established and regularly followed.'" *Id.* (quoting *Walker v. Martin*, 562 U.S. 307, 131 S. Ct. 1120, 1127 (2011)). Even where a rule meets that standard, however, it does not constitute an adequate ground in "exceptional cases" where the state court's application of the rule is "exorbitant" (unreasonable). *Lee v. Kemna*, 534 U.S. 362, 376 (2002).

The *Lee* Court identified three "considerations" that counseled toward finding an application exorbitant:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto*, 331 F.3d at 240 (citing *Lee*, 534 U.S. at 381–85). The Supreme Court has held the third consideration to be the "most important," *Lee*, 534 U.S. at 382, and at least one recent Second Circuit decision has focused exclusively on this factor, *see Downs*, 657 F.3d at 102 ("To determine whether this case involves an exorbitant misapplication of a state rule, we look to see if the state's application serves a legitimate state interest.").[2]

---

[2] Another Second Circuit decision notes that "the three considerations highlighted by the *Lee* Court . . . are by no means a 'test' but instead are simply 'guideposts' for evaluating the state interest in a procedural rule against the circumstances of a particular case." *Whitley v. Ercole*, 642 F.3d 278, 287–88 (2d Cir. 2011).

*iii. NY CPL § 470.05(2) is Firmly Established and Regularly Followed*

Numerous decisions in this Circuit have held NY CPL § 470.05(2) to be "firmly established and regularly followed." *See, e.g.*, *Downs*, 657 F.3d at 104 ("[W]e have held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule."); *Whitley*, 642 F.3d at 286–87 ("Our case law has long made clear that New York's contemporaneous objection rule is just such a 'firmly established and regularly followed' rule"); *Richardson v. Greene*, 497 F.3d 212, 219 (2d Cir. 2007) ("[I]n accordance with New York case law, application of the state's preservation rule is adequate—i.e., firmly established and regularly followed."); *Roldan v. Ercole*, No. 08-CV-6548, 2009 WL 2191176, at *3 (S.D.N.Y. July 20, 2009) (Sand, J.) ("[New York's] rule—that parties must preserve an issue for appellate review by lodging a contemporaneous objection—has been recognized as such a firmly established and regularly followed rule."). Therefore, the Court need assess only whether the application of the Rule to Haxhia's petition is "exorbitant."

The Court holds that the application of NY CPL § 470.05(2) to Haxhia's Sixth Amendment claims is not exorbitant with respect to his evidentiary claims, but it is exorbitant with respect to his jury deliberation claims.

*iv. The State Court's Evidentiary Rulings Were Not Exorbitant*

For each of the four evidentiary decisions that Haxhia claims violated his Sixth Amendment right to a fair trial, Haxhia objected on only state law grounds and did not alert the trial court to any constitutional concerns.

For instance, when Haxhia objected to the admission of the 911 tape, he gave several grounds: He claimed (1) that the tape constituted a violation of New York's discovery rules, based on the State's initial assertion that no such tape existed when Haxhia first requested it over

two years before trial; (2) that the tape was not relevant; (3) that it was a prior consistent statement; and (4) that the State lacked a proper foundation for the tape's admission. *See* (Trial Trans. [ECF No. 12] at 142–58). These are all state law grounds for objection. At no point did Haxhia mention the United States Constitution or put forth any argument that would implicate the analysis required to prove a Sixth Amendment violation.

Haxhia thus failed to "apprise the trial judge and the prosecutor of the nature and scope" of his constitutional claims regarding the contested evidentiary rulings. *Cf. Smith v. Duncan*, 411 F.3d 340, 349 (2d Cir. 2005) (holding that a claim that the exclusion of a 911 tape was erroneous under New York law was not enough to alert the trial court of the movant's constitutional claim). Accordingly, the state had a legitimate interest in finding Haxhia's claim unpreserved and procedurally barred. It follows that the application of NY CPL § 470.05(2) was not exorbitant as applied to Haxhia's 911 claim.

The same can be said for Haxhia's other evidentiary claims. Haxhia objected to the admission of the ballistics report only as a violation of New York's discovery rules, (Trial Trans. [ECF No. 13] at 411), and objected to Haziraj's victim impact testimony on only relevance grounds, (Trial Trans. [ECF No. 12] at 161–62). Haxhia argued for the admission of his medical records on relevance grounds alone. (Trial Trans. [ECF No. 10] at 638–42). At no point during these objections did Haxhia mention anything that might have alerted the trial court to a Sixth Amendment violation.

Consequently, the state court's application of NY CPL § 470.05(2) to Haxhia's related constitutional claims was not exorbitant.

> v.   The State Court's Jury Partiality Ruling was Exorbitant

Haxhia's Sixth Amendment claim based on the trial court's response to the juror notes at issue here is another matter.

Haxhia never explicitly objected on Sixth Amendment grounds to the trial court's handling of jury deliberations; the only law Haxhia cited specifically during his dialogue with the trial court was NY CPL § 270.35.[3]  *See* (Trial Trans. [ECF No. 8] at 1007).  Nonetheless, unlike his evidentiary challenges, Haxhia's objections to the trial court's handling of the juror notes placed the trial court on notice of his constitutional concerns.  Accordingly, the application of NY CPL § 470.05(2) to those objections was exorbitant.

As an initial matter, "it is the court's duty to ensure that every criminal defendant receives a fair trial," and "an essential component of fairness is an impartial jury."  *United States v. Stewart*, 317 F. Supp. 2d 432, 436 (S.D.N.Y. 2004) (Cedarbaum, J.).  Thus, Haxhia's contention of possible juror bias should have immediately alerted the trial court to the constitutional ramifications of Haxhia's objection.

Each time a juror note was received, Haxhia asked the trial court to hold a hearing and individually *voir dire* the jurors to ascertain whether each juror could continue to fairly

---

[3] NY CPL § 270.35 provides:

> If at any time after the trial jury has been sworn and before the rendition of its verdict, a juror is unable to continue serving by reason of illness or other incapacity, or for any other reason is unavailable for continued service, or the court finds, from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case or has engaged in misconduct of a substantial nature, but not warranting the declaration of a mistrial, the court must discharge such juror. . . .

> In determining pursuant to this section whether a juror is unable to continue serving by reason of illness or other incapacity, or is for any other reason unavailable for continued service, the court shall make a reasonably thorough inquiry concerning such illness, incapacity or unavailability . . . .

N.Y. CPL § 270.35(1)–(2)(a).

deliberate.  As the Supreme Court noted in *Smith v. Phillips*, "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."  455 U.S. 209, 215 (1982).  Haxhia's request for such hearings should have further alerted the court to the constitutional dimensions of Haxhia's claim, as well as the means by which a potential constitutional violation could be investigated and remedied.

Because the trial court was on notice of the constitutional dimension of Haxhia's challenge to jury impartiality, applying NY CPL § 470.05(2) served no legitimate state purpose.  The purpose of the rule is to ensure that trial courts have the opportunity to address the constitutional issues raised by counsel at the time they are raised.  *See Downs*, 657 F.3d at 104; *Cotto*, 331 F.3d at 245; *Garcia v. Lewis*, 188 F.3d 71, 81 (2d Cir. 1999).  The trial court had that opportunity here, but failed to act on it.  By barring Haxhia's Sixth Amendment claim, the New York appeals court denied Haxhia's constitutional right simply because his counsel's objection failed to mention the United States Constitution, notwithstanding that the ground for the objection was apparent.  *See United States v. Flores-Martinez*, 677 F.3d 699, 710 (5th Cir. 2012) ("We have held that an objection to the violation of a constitutional right is not inadequate merely because of the failure to use the magic words, 'I object.'" (internal quotation marks omitted)); *Ferguson v. Sec'y for the Dep't of Corr.*, 580 F.3d 1183, 1213 (11th Cir. 2009) ("Though magic words are not needed to make a proper objection, counsel must articulate his concern with sufficient specificity to inform the trial judge of the alleged error." (internal citation omitted)); *United States v. Humphrey*, 287 F.3d 422, 445 (6th Cir. 2002) ("The preservation of a constitutional objection should not rest on magic words; it suffices that the district court be apprised of the objection and offered an opportunity to correct it."); *United States v. Essex*, 734 F.2d 832, 842 (D.C. Cir. 1984) ("No magic words are required to constitute an objection.").

The Court concludes that NY CPL § 470.05(2) does not constitute an independent and adequate state ground that bars consideration of Haxhia's Sixth Amendment claim regarding juror partiality. Having found no other bar to consideration, the Court must now decide whether the trial court's response to the juror notes was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

### b. The Trial Court's Handling of the Juror Notes

*i. Federal Rule of Evidence 606(b) Does Not Preclude the Admission of the Juror Notes*

To decide whether the trial court's response to the juror notes was "contrary to . . . clearly established Federal law," 28 U.S.C. § 2254(d)(1), the Court must address a threshold question of first impression in this Circuit: whether Federal Rule of Evidence 606(b) bars a reviewing court from considering evidence of juror statements submitted to the trial court before the jury returned its verdict. A careful reading of Rule 606(b) makes clear that it does not.

Rule 606(b) states:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

Fed. R. Evid. 606(b)(1). The Rule's two sentences work in concert to prevent jurors from impugning verdicts by testifying about jury deliberations after the jury returns its verdict. Because the sentences work in concert, it is necessary to read them in relation to one another. *See Holloway v. United States*, 526 U.S. 1, 6 (1999) ("In interpreting the statute at issue, '[w]e consider not only the bare meaning' of the critical word or phrase 'but also its placement and purpose in the statutory scheme.'" (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995)));

*United States v. Pacheco*, 225 F.3d 148, 154 (2d Cir. 2000) ("The 'whole act' rule of statutory construction exhorts us to read a section of a statute not 'in isolation from the context of the whole Act' but to "look to the provisions of the whole law, and to its object and policy,'" (quoting *Richards v. United States*, 369 U.S. 1, 11 (1962))).

The Rule's first sentence relates strictly to juror testimony and is immediately qualified as precluding only testimony given "[d]uring an inquiry into the validity of a verdict." Thus, the Rule does not prevent the admission of juror testimony given before a verdict is reached, because it is only after the jury reaches a verdict that a juror could testify "[d]uring an inquiry into the validity of a verdict."

The second sentence reinforces the first sentence by barring other ways in which a party might seek to admit evidence of juror statements. By disallowing juror affidavits and other evidence of juror statements, a party is precluded from admitting testimony prohibited by the Rule's first sentence simply by, for instance, providing it in writing, rather than by oral testimony. Because the Rule's second sentence works to reinforce the first, it makes sense to read the entirety of Rule 606(b), rather than just its first sentence, to preclude only evidence submitted to the trial court post-verdict. It follows that Rule 606(b) should not be read to bar evidence of juror statements submitted to the trial court before the jury returns its verdict.

The policy considerations that animate Rule 606(b) reinforce the Court's reading. Rule 606(b) seeks to prevent a losing party from badgering jurors after they return their verdict, in the hope of finding evidence that might provide cause to reverse a disappointing outcome. As the Supreme Court cautioned nearly one hundred years ago:

> [L]et it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. *Jurors*

*would be harassed and beset by the defeated party* in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict.

*McDonald v. Pless*, 238 U.S. 264, 267–68 (1915) (emphasis added).

The policy considerations underlying Rule 606(b) are not implicated when considering juror statements made pre-verdict. Parties have no incentive to interrogate jurors before the jury returns a verdict, because no one knows what the jury's decision will be. Even if pre-verdict evidence gives a party an incentive to harass jurors, significant protections already exist that prevent parties from interacting with jurors during their deliberations. *See Remmer v. United States*, 347 U.S. 227, 229 (1954) ("In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial . . . .").[4]

Accordingly, the Court holds that Rule 606(b) does not bar a reviewing court from considering evidence of juror statements made during jury deliberations if that evidence is submitted to the trial court before the jury returns its verdict.[5]

---

[4] Some courts have described the policy considerations embodied in Rule 606(b) more specifically as "freedom of deliberation, finality of verdicts, and protection of jurors against harassment by dissatisfied litigants." *Tanner v. United States*, 483 U.S. 107, 137 (1987) (Marshall, J., dissenting); *see also Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 108 (2d Cir. 2004); Fed. R. Evid. 606(b) advisory committee's notes. Even described this way, it is still clear that the consideration of pre-verdict evidence does not significantly harm these values.

Allowing the admission of juror statements pre-verdict will not increase juror harassment or harm the finality of verdicts because, as discussed previously, no verdict would yet exist, and therefore, neither party would have any incentive to investigate jurors or overturn a non-existent verdict.

The free exchange of views that should occur during jury deliberations is impinged whenever juror statements are made public through court proceedings, including when those statements are offered as evidence to a trial court pre-verdict. Yet Rule 606(b) permits evidence of juror statements to be admitted before the jury returns a verdict. Therefore, the framers of the Rule must have regarded some impingement to that free exchange as acceptable when balanced against the benefits that would accrue by allowing pre-verdict jury statements. *Cf. Tanner*, 483 U.S. at 127 (noting that a defendant's Sixth Amendment rights are protected by "several aspects of the trial process," including the fact that "jurors are observable by each other, and may report inappropriate juror behavior to the court *before* they render a verdict" (emphasis in original)). That impingement is no more harmful pre-verdict than post-verdict.

[5] A recent First Circuit decision held that Rule 606(b) cannot be used to "bar juror testimony in those rare and grave cases where claims of racial or ethnic bias during jury deliberations implicate a defendant's right to due process and an impartial jury." *United States v. Villar*, 586 F.3d 76, 87 (1st Cir. 2009). Because Juror #3 alleges that she was called a "nigger" during deliberations, it is possible that if this Court followed *Villar*, Rule 606(b) would be inapplicable here, even if the evidence at issue had been submitted for the first time post-verdict.

> *ii. Haxhia's Habeas Petition Meets the Standard Set Forth in 28 U.S.C. § 2254*

Haxhia alleges that the trial court's response to the juror notes violated his Sixth Amendment right to a fair trial. The Court agrees, and holds that the trial court acted "contrary to . . . clearly established Federal law." 28 U.S.C. § 2254(d)(1).

"[C]learly established Federal law" includes only "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (internal quotation marks omitted). A state court decision is "contrary to" clearly established Federal law when the court either "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. *Id.* at 405. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786–87 (2011). "'[I]f a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

In her first note to the trial court, Juror #3 stated that she was called a "nigger" and that she felt she was being "forced to agree with others." In her second note, she asserted that she would "not be able to render a decision in [the] case objectively." (Resp't's Mem. 24, 27). Taken together, Juror #3's statements convey unequivocally that she cannot be impartial. These

---

However, because the Court finds Rule 606(b) to be inapplicable for other reasons, the Court need not consider the wisdom of the First Circuit's decision.

statements present a paradigmatical situation where due process can be effectuated only by a trial court investigating, and preventing a prejudicial occurrence.

The trial court's obligation in this regard was set forth in *Smith v. Phillips*, 455 U.S. 209. There Phillips claimed that one of the jurors in his case had been biased because the juror had applied for a position in the prosecutor's office while the trial was ongoing, *id.* at 212, a fact brought to the trial court's attention *after* the jury had returned its verdict. The trial court held a hearing post-trial at which the prosecutor and the juror testified; the court determined that the juror had remained impartial. *Id.* at 213–14. The Supreme Court, hearing the case on *habeas* review, held that "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and *to determine the effect of such occurrences when they happen*." *Id.* at 217 (emphasis added).[6] In framing the rule as one that should address statements of bias "when they happen," the Court articulates the rule that serious allegations of juror bias should be dealt with when there is still time to remedy them. Because the trial court investigated the bias allegation in a timely fashion, the Court denied Phillips's habeas petition. *Id.* at 221.

---

[6] Although "the distinction [between holding and dictum] is fuzzy not only at the level of application but at the conceptual level," Richard A. Posner, The Federal Courts: Crisis and Reform 252–53 (1985), the Court concludes that *Smith* should be interpreted as holding that due process requires a judge to determine the effect of prejudicial occurrences when they happen. As the Supreme Court stated in *Seminole Tribe of Florida v. Florida*, "[w]hen an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound." 517 U.S. 44, 67 (1996); *see also Parker v. K & L Gates, LLP*, 76 A.3d 859, 877 (D.C. 2013) (Ferren, J., concurring) ("There is substantial authority for the principle that the legal reasoning upon which a court relies in support of a holding is itself also a holding."); Michael C. Dorf, *Dicta and Article III*, 142 U. Pa. L. Rev. 1997, 2029 (1994) ("Legal and judicial culture play a critical role in checking abuses of the judge's countermajoritarian power. Central to that culture is the notion that any judicial decision must be justified by the giving of reasons. . . . Viewed from this perspective, the reasons a court gives for a decision constitute a critical part of the decision itself . . . ."); Michael Abramowicz & Maxwell Stearns, *Defining Dicta*, 57 Stan. L. Rev. 953, 1048 (2005) (explaining that the "ancient distinction between the holding and the ratio decidendi" has blurred, but both are distinct from dicta). *Smith*'s delineation of Phillips's due process rights, as they relate to allegations of juror bias, was necessary to the outcome of the case, because without delineating what petitioner's due process rights were, it would not have been possible for the Court to have ascertained whether those rights were sufficiently protected by the trial court's hearing.

The refusal of the trial court in the instant case to hold even the most cursory investigation into Juror #3's statements of bias, and the effect of any bias, is in direct contravention of *Smith*. First, it is clear from the record that "prejudicial occurrences" took place during jury deliberations. Juror #3 was attacked with a racial epithet, and she expressly told the trial court that she was unable to objectively decide the case. Such unequivocal evidence of actual bias—neither investigated nor remedied by the trial court—deprived Haxhia of his right to an impartial jury.[7] *See Rivera v. Illinois*, 556 U.S. 148, 162 (2009) (asserting that due process requires "a fair trial before an impartial and properly instructed jury"); *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000) (declaring that the right to an impartial jury is a "constitutional protection[] of surpassing importance"); *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988) ("Any criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body."); *Lockhart v. McCree*, 476 U.S. 162, 192 (1986) (Marshall, J., dissenting) (stating that it is a "settled constitutional principle[]" that all defendants have "the right to a fair trial and an impartial jury whose composition is not biased").

Second, the trial court did not "determine the effect" of that prejudicial occurrence. Haxhia claims that the trial court erred by refusing to hold a hearing into bias. *Smith* does not hold that a trial court must hold a *hearing* after a claim of prejudice is made. *Smith* stated only that "such determinations *may* properly be made at a hearing." *Smith*, 455 U.S. at 217 (emphasis

---

[7] Without investigating Juror #3's claims, it was impossible for the trial court, and it is impossible for this Court, to know the breadth and magnitude of Juror #3's bias and the ways in which it might have affected Haxhia. As the dissenting opinion in *Tracey v. Palmateer* asserted in a similar case:

> [t]he trial judge never inquired further to ascertain the source of [the jurors'] biased opinions. Assume one of these jurors testified that her opinion was formed before trial by reading an excerpt of the case in the newspaper; or that an outside source had approached her before trial; or assume one of these jurors might have said that she felt that anyone charged with a crime was guilty of a crime—reviewing courts will never know the basis of her prejudgment because the trial court failed to investigate the source of the obvious bias.

341 F.3d 1037, 1051 (9th Cir. 2003) (Lay, J., dissenting).

17

added); *see also Tracey v. Palmateer*, 341 F.3d at 1044 ("*Smith* states that this 'may' be the proper course, and that a hearing 'is sufficient' to satisfy due process. Smith leaves open the door as to whether a hearing is always required . . . ." (quoting *Smith*, 455 U.S. at 217–18)).[8] Nonetheless, *Smith* is clear that some investigation is required to determine the effect of any bias. The record indicates that the trial judge in the instant case did nothing beyond delivering what Haxhia characterizes as a "pep talk." (Pet'r's Mem. 17). That talk did nothing to gather information about Juror #3's bias, and did not assess how it might prejudice Haxhia's right to an impartial jury. *See Dennis v. United States*, 339 U.S. 162, 168 (1950) (asserting that "the trial court must be zealous to protect the rights of an accused," including by exercising "a serious duty to determine the question of actual bias").

Because the trial court failed to undertake even the most minimal of investigations into Juror #3's allegations of partiality, the Court holds that the trial court's actions were "contrary to . . . clearly established Federal law," and therefore, Haxhia's petition must be granted.

---

[8] In *Tracey*, the Ninth Circuit denied Tracey's habeas petition, relying heavily on *Smith*'s statement that a hearing "may" be the proper remedy for bias allegations. The *Tracey* court noted that "*Smith* leaves open the door as to whether a hearing is always required" when allegations of juror bias are presented to a trial court, and therefore determined that "[c]learly established federal law, as determined by the Supreme Court, does not require state or federal courts to hold a hearing every time a claim of juror bias is raised." *Tracey*, 341 F.3d at 1044–45. Judge Lay, in dissent, declared that "[i]t would be a mockery of justice to say that the sentence relied upon by the majority [about how a hearing 'may' be proper] reduces the application of the constitutional mandate required of state courts to a matter of discretion when there exists a clear, colorable claim of bias. In this case, as in many other state habeas cases, the trial court owed a duty to "determine the effect of such occurrences when they happened." *Id.* at 1050.
  However, *Tracey* is distinguishable from the instant case. In *Tracey*, although the trial court did not hold a full-fledged hearing, it did inquire into the bias allegation: "With the parties present and on the record, the trial court questioned [a juror] regarding what she had heard. This may not be as in-depth a hearing as contemplated by *Remmer* and *Smith*. But it was the kind of discretionary inquiry best left to the sound judgment of the trial judge who observed *voir dire* and empaneled the jury." *Id.* at 1045. Because the trial court in *Tracey* did some sort of investigation, even if only a superficial one, it was reasonable for the Ninth Circuit to hold that there was no clearly established law requiring the trial court to have done more. In the instant case, however, the trial court conducted no investigation whatsoever, a clear violation of the standard set forth in *Smith*.

### III. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is GRANTED. Haxhia shall be released unless the state commences prosecution or takes other action appropriate in light of this decision within sixty days. A certificate of appealability regarding the alleged evidentiary errors will not issue because Petitioner failed to make a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253. The Clerk of Court is directed to close this case; all pending motions are moot.

SO ORDERED.

Dated: New York, New York
March 2, 2015

/s/
Kimba M. Wood
United States District Judge
